**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RECEIPT # _46557_
AMOUNT $ _250_
SUMMONS ISSUED _✓-/_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _✓_
DATE _8-31-05_

STONEWALL INSURANCE COMPANY,      )
                                  )
        Plaintiff,                )
                                  )
        v.                        )      No.
                                  )
XL REINSURANCE AMERICA, INC.      )
                                  )
        Defendant.                )

**05 - 1 1 7 9 8 NG**

**COMPLAINT**                     MAGISTRATE JUDGE Dein

Plaintiff, Stonewall Insurance Company ("SICO"), by and through its counsel, and for its

Complaint against XL Reinsurance America, Inc. ("XLRA"), states as follows:

**PARTIES**

1.     Plaintiff is a Rhode Island corporation with its principal place of

business in Massachusetts.

2.     Defendant is a New York corporation with its principal place of business in

Connecticut. Defendant is successor to North American Company for Property and Casualty

Insurance and Service Fire Insurance Company of New York (defendant and its predecessors

collectively are referred to herein as "XLRA").

**PRELIMINARY STATEMENT**

3.     SICO seeks declaratory relief and damages due to XLRA's failure and refusal to

pay over $2 million owed to SICO under facultative reinsurance certificates.

## **JURISDICTION AND VENUE**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over XLRA because XLRA regularly does business within this judicial district.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## **BACKGROUND**

7.      XLRA participated in the reinsurance of insurance policies issued by SICO to Studebaker-Worthington, Inc. ("S-W") under facultative reinsurance contracts.

8.      SICO issued policy number 33000013, policy number 36000002, and policy number 36000042 to S-W (the "S-W Policies"). Copies of the S-W Policies are attached hereto and incorporated herein as Exs. A, B and C.

9.      XLRA reinsured policy number 33000113 under facultative reinsurance certificate number C-00454, reinsured policy number 36000002 under facultative reinsurance certificate number 2697, and reinsured policy number 36000042 under facultative reinsurance certificate number C-00753. Copies of these certificates are attached hereto and incorporated herein as Exs. D, E and F.

10.     SICO has paid in excess of $6 million in indemnity for asbestos bodily injury claims under the S-W Policies.

11.     SICO has billed XLRA a total of $289,399.34 under certificate number C-00454, has billed XLRA a total of $1,033,412.17 under certificate number 2697, and has billed XLRA a

2

total of \$567,877.86 under certificate number C-00753. The total amount billed to XLRA for payments under the S-W Policies is \$1,890,689.37.

12.    XLRA has refused to pay any of the amounts billed under these certificates.

13.    XLRA also participated in the reinsurance of an insurance policy issued by SICO to Waste Management Corporation ("WMC") under a facultative reinsurance contracts.

14.    SICO issued policy number 11968 to WMC (the "WMC Policy"). A Copy of the WMC Policy is attached hereto and incorporated herein as Ex. G.

15.    XLRA reinsured the Policy under facultative reinsurance certificate number 1531. A copy of this certificate is attached hereto and incorporated herein as Ex. H.

16.    SICO has paid approximately \$5.5 million in indemnity for hazardous waste claims under the Policies.

17.    SICO has billed XLRA a total of \$239,688.00 under certificate number 15740X but XLRA has refused to pay anything.

## COUNT I

### Declaratory Judgment

18.    SICO incorporates paragraphs 1-17 above as if fully set forth in this paragraph 18.

19.    SICO repeatedly has demanded that XLRA pay the amounts billed regarding S-W, but XLRA has refused to do so. Therefore, there is an actual controversy between the parties regarding XLRA's obligation to pay these amounts.

20.    XLRA is obligated to pay SICO the amounts the amounts it has been billed regarding S-W, a total of \$1,890,689.37.

3

total of $567,877.86 under certificate number C-00753. The total amount billed to XLRA for payments under the S-W Policies is $1,890,689.37.

12.     XLRA has refused to pay any of the amounts billed under these certificates.

13.     XLRA also participated in the reinsurance of an insurance policy issued by SICO to Waste Management Corporation ("WMC") under a facultative reinsurance contracts.

14.     SICO issued policy number 11968 to WMC (the "WMC Policy"). A Copy of the WMC Policy is attached hereto and incorporated herein as Ex. G.

15.     XLRA reinsured the Policy under facultative reinsurance certificate number 1531. A copy of this certificate is attached hereto and incorporated herein as Ex. H.

16.     SICO has paid approximately $5.5 million in indemnity for hazardous waste claims under the Policies.

17.     SICO has billed XLRA a total of $239,688.00 under certificate number 15740X but XLRA has refused to pay anything.

### COUNT I

### Declaratory Judgment

18.     SICO incorporates paragraphs 1-17 above as if fully set forth in this paragraph 18.

19.     SICO repeatedly has demanded that XLRA pay the amounts billed regarding S-W, but XLRA has refused to do so. Therefore, there is an actual controversy between the parties regarding XLRA's obligation to pay these amounts.

20.     XLRA is obligated to pay SICO the amounts the amounts it has been billed regarding S-W, a total of $1,890,689.37.

3

WHEREFORE, Stonewall Insurance Company prays that this Court enter a judgment declaring XL Reinsurance America, Inc. is obligated to pay the amounts billed respecting S-W, and grant Stonewall Insurance Company such other relief in its favor as is just and proper.

## COUNT II

### Breach of Contract

21.    SICO incorporates paragraphs 1-20 above as if fully set forth in this paragraph 21.

22.    XLRA is in breach of the facultative reinsurance certificates pertaining to the S-W risk by virtue of XLRA's failure and refusal to pay amounts billed to it relating to S-W.

23.    SICO has fully performed all of its obligations under the pertinent facultative reinsurance certificates.

WHEREFORE, Stonewall Insurance Company prays that this Court (a) enter judgment in Stonewall Insurance Company's favor, and against XL Reinsurance America, Inc., in the amount of $1,890,689.37, along with interest, costs and attorneys fees, and (b) grant Stonewall Insurance Company such other and further relief as is just and proper.

## COUNT III

### Declaratory Judgment

24.    SICO incorporates paragraphs 1-23 above as if fully set forth in this paragraph 24.

25.    SICO repeatedly has demanded that XLRA pay the amounts billed regarding the WMC loss under facultative certificate number 1531, but XLRA has refused to do so. Therefore, there is an actual controversy between the parties regarding XLRA's obligation to pay this amount.

26.    XLRA is obligated to pay the amount billed under certificate number 1531.

4

WHEREFORE, Stonewall Insurance Company prays that this Court enter a judgment declaring XL Reinsurance America, Inc. is obligated to pay the amount billed under certificate number 1531, and grant Stonewall Insurance Company such other relief in its favor as is just and proper.

## COUNT IV

### Breach of Contract

27.    SICO incorporates paragraphs 1-26 above as if fully set forth in this paragraph 27.

28.    SRAC's failure and refusal to pay the amount billed to it under facultative certificate number 1531 is a breach of that contract.

29.    SICO has fully performed all of its obligations under facultative certificate number 1531.

WHEREFORE, Stonewall Insurance Company prays that this Court (a) enter judgment in Stonewall Insurance Company's favor, and against XL Reinsurance America, Inc., in the amount of $239,688.00, along with interest, costs and attorneys fees and (b) Stonewall Insurance Company such other and further relief as is just and proper.

Respectfully submitted,

STONEWALL INSURANCE COMPANY
By its attorneys

Kevin J. O'Connor, BBO #555248
Michael S. Batson, BBO #648151
HERMES, NETBURN, O'CONNOR,
    & SPEARING, P.C.
111 Devonshire Street
Boston, MA 02109-5407
(617) 728-0050
Dated: August 31, 2005        (617) 728-0052 - fax

G:\DOCS\KJO\Cavell\XL DJ\Correspondence\Pleadings\Complaint.doc

5

STONEWALL... INSURANCE ...
... DABLE INSURANCE ... INC.

LOSS INFORMATION

UNDERWRITING INFORMATION

| CO. | CONTRACT | SUB-LINE | CLASS | Mo. L.o.e. | S'A COMM. | BRK'S COMM. | PRODUCER | STATE | |
|---|---|---|---|---|---|---|---|---|---|

In favor of:

Address:

Type of Coverage: **ACCIDENT INSURANCE**

In the amount of: **$1,000,000.00**

Term: Beginning at **12:01 A.M.** on the **1ST** day of **JANUARY** 1974
and ending at **12:01 A.M.** on the **1ST** day of **JANUARY** 1975
Standard time at the place of location of risks insured, and in accordance with terms and conditions of the form(s) attached and the Standard Clauses on the reverse side of this page.

Forms: At time of issuance this Policy contains a _____ page Insuring Form and Endorsements 1 through _____ inclusive. Standard Clause _____ shall not apply.

SURPLUS LINES INFORMATION

CROSS REFERENCES

| Premium | Due: | At Inception | 1st Anniversary | 2nd Anniversary | |
|---|---|---|---|---|---|
| PREMIUM | | $63,000.00 | $ | $ | ANNUAL REVIEW |
| State Tax | | $ | $ | $ | ADD |
| Stamping Fee | | $ | $ | $ | |
| Service Fee | | $ | $ | $ | INST. |
| Policy Fee | | $ | $ | $ | ENTER FIRE |
| | | | | | ENTER QUAKE |
| TOTAL | | $65,000.00 | | | |

Dated at **ATLANTA, GEORGIA**
this **23RD** day of **JANUARY** 19 **74**



TO DATA PROCESSING

MAR 1 1974

FROM ACCOUNTING

RECEIVED
FEB 27 1974

IT IS UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED
UNDER THIS POLICY IN RESPECT TO WORKMEN'S COMPENSATION
IN THE STATE OF CALIFORNIA.

IN CONSIDERATION OF THE ABOVE IT IS UNDERSTOOD AND AGREED
THAT ITEM 5 AGGREGATE INSURANCE SUBSECTION (A) "RETENTION"
OF THE SCHEDULE FORMING PART OF THIS POLICY, WILL BE REDUCED
BY THE LOSSES APPLICABLE TO WORKMEN'S COMPENSATION IN THE
STATE OF CALIFORNIA.

SIGNED AND ACCEPTED _____
                              NAMED INSURED

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No.    33000113

Issued To:        STUDEBAKER-WORTHINGTON, INC., ET AL

Effective Date:   JANUARY 1, 1974

Endorsement No.:  6

GLA 12E(99)E474

STONEWALL INSURANCE COMPANY

By _____

ENDORSEMENT 1

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS AGREED THAT ITEM 5 (A),
XXX XXXX, WILL NOT INCLUDE LOSS PAID BY THE BASIC INSURER TO THE EX-
TENT SUCH LOSS ARISES OUT OF:

1) AIRCRAFT OR MISSILE PRODUCTS.

2) DAMAGE TO PROPERTY OF OTHERS UNDER BAILMENT TO ANY INSURED.

3) VIOLATION OF NORMAL OR CUSTOMARY TRADE PRACTICES.

4) BREACH OF EXPRESS OR IMPLIED WARRANTY OF FITNESS OF PURPOSE
   OR EXPRESS OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR
   PURPOSE.

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No. 33000112

Issued to:       STUDEBAKER-WORTHINGTON, INC., ET AL. (SEE SCHEDULE)

Dated at:        ATLANTA, GEORGIA

Date:            JANUARY 23, 1974                DEPENDABLE INSURANCE ASSOCIATES, INC.

D-6

By_____

HOME OFFICE COPY

## MANDATORY EXCLUSIONS AND CONDITIONS

**ENDORSEMENT NO. 2**

**EFFECTIVE: AT INCEPTION**

It is agreed that:

A. As respects all operations, this policy does not apply to liability for:

1. The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden or accidental.

2. Fines, penalties, punitive or exemplary damages.

B. As respects oil or other petroleum operations over water, this policy does not apply to liability for:

1. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination.

2. The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.

3. Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured.

4. Removal of, loss of or damage to subsurface oil, gas or any other substance, the property of others.

C. As respects oil or other petroleum operations on land only, this policy does not apply to liability for:

1. Removal of, loss of or damage to subsurface oil, gas or any other substance, the property of others, provided always that this paragraph (C1) shall not apply to any liability which would otherwise be covered under this Insurance for such removal, loss, or damage directly attributable to blow-out, cratering or fire of an oil or gas well owned or operated by, or under the control of, the Insured.

2. Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured.

3. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, resulting from the discharge, dispersal or release, or escape of any substance into or upon any watercourse or body of water.

4. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination other than as described in Paragraph (C3) above, provided always, that this Paragraph (C4) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

5. The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

## II. CANCELLATION FOR NON PAYMENT OF PREMIUM

It is agreed that irrespective of any other terms or conditions contained in this policy or endorsements attached thereto, this policy may be cancelled by the company, or by Dependable Insurance Associates, Inc., in their behalf, for Non-Payment of any unpaid portion of the premium by delivering to the insured or by sending to the insured by mail, registered or unregistered, at the insured's address as shown herein, not less than ten days written notice stating when the cancellation shall be effective.

All other terms and conditions remain unchanged.

Attached to and Forming a Part of Policy No. **33000112**

Issued to: **STUDEBAKER-WORTHINGTON, INC., ET AL.**

Dated at: **ATLANTA, GEORGIA**

Date: **JANUARY 25, 1974**

DEPENDABLE INSURANCE ASSOCIATES, INC.

By _____

D-7 (REV.)

## STONEWALL INSURANCE COMPANY
### BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

## SCHEDULE

1. **INSURED:** STUDEBAKER-WORTHINGTON, INCORPORATED AND ALL SUBSIDIARIES OR DIVISIONS AS MAY NOW OR HEREAFTER BE CONSTITUTED.

2. **ADDRESS:** c/o ARMISTEAD, MILLER & WALLACE
NASHVILLE, TENNESSEE

3. **EFFECTIVE DATE:** JANUARY 1, 1974

4. **EXPIRATION DATE:** JANUARY 1, 1975

5. **AGGREGATE INSURANCE:**

    2,600,000.00    (See End# 4)

   (A) RETENTION: $~~3,100,000.00~~ TO BE ADJUSTED ON GROSS REVENUE, THE SPECIFIC RATE TO BE AGREED

      11,000,000.00

   (B) INSURANCE LIMIT: $~~1~~,000,000.00

   (C) LOSS LIMITATION PER OCCURRENCE:  $100,000  EA OCCURR, GENERAL LIABILITY
                                               AND
                                           100,000  EA OCCURR, AUTOMOBILE LIABILITY
                                                AND
                                           100,000  EA OCCURR, WORKMEN'S COMPENSATION

6. **PREMIUM:** $68,000.00 FLAT ANNUAL

7. **BASIC INSURANCE CARRIER OR SERVICE COMPANY:** INSURANCE COMPANY OF NORTH AMERICA
   (1) COMPREHENSIVE GENERAL - AUTOMOBILE LIABILITY POLICY

   (2) WORKMEN'S COMPENSATION AND EMPLOYER'S LIABILITY POLICY

## STONEWALL INSURANCE COMPANY
### BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

THIS IS A POLICY OF AGGREGATE INSURANCE ISSUED BY THE STONEWALL INSURANCE COMPANY (HEREIN CALLED THE COMPANY) TO THE PARTY OR PARTIES NAMED IN THE DECLARATIONS MADE A PART HEREOF (HEREIN CALLED THE INSURED).

WHEREAS, CERTAIN INSURORS HAVE ISSUED TO THE INSURED POLICIES OF INSURANCE DESCRIBED IN ITEM 7 OF THE SCHEDULE (WHICH POLICIES INCLUDING RENEWALS OR RE- PLACEMENTS THEREOF, ARE HEREIN CALLED THE BASIC INSURANCE), AND WHEREAS THE INSURED HAS PAID THE PREMIUM STATED HEREIN.

NOW, THIS POLICY TO THE EXTENT AND IN THE MANNER HEREINAFTER PROVIDED, IS TO INDEMNIFY THE INSURED FOR LOSS SUSTAINED DURING THE PERIOD OF THE POLICY, SUB- JECT TO THE TERMS AND CONDITIONS OF INSURANCE POLICIES SET OUT IN ITEM 7 OF THE SCHEDULE, WITH THE EXCEPTION OF LIMITS OF LIABILITY AND DEDUCTIBLE CLAUSES, OR WHERE AMENDED BY ENDORSEMENT ATTACHED HERETO.

PROVIDED THAT THE COMPANY'S LIMIT OF LIABILITY UNDER THIS POLICY IS LIMITED TO THE AMOUNT SPECIFIED IN ITEM 5 (B) OF THE SCHEDULE, BUT ONLY IN EXCESS OF AND AFTER THE INSURED, UNDER THE CONDITIONS HEREOF, HAS INCURRED DEFINITE LEGAL LIABILITY SO AS TO EXPEND THE INSURED'S RETENTION AS STATED IN ITEM 5 (A) OF THE SCHEDULE, SUBJECT IN ALL INSTANCES TO A MAXIMUM EXPENDITURE PER OCCURRENCE AS SET OUT IN ITEM 5 (C) OF THE SCHEDULE.

EXPENDITURES, AS USED IN THE FOREGOING PARAGRAPH SHALL INCLUDE ONLY PAYMENTS ACTUALLY MADE BY OR FOR THE INSURED OR FOR WHICH THE INSURED HAS DEFINITE LEGAL LIABILITY, SPECIFICALLY EXCLUDING ANY LEGAL OR ADJUSTMENT COSTS.

## CONDITIONS

### 1.    BASIC INSURANCE OR SERVICE COMPANY

IT IS A CONDITION PRECEDENT TO THE COMPANY'S DUTY TO INDEMNIFY THAT THE INSURED HAS ENGAGED THE SERVICES OF A BASIC INSUROR OR A SERVICE COMPANY APPROVED BY THE COMPANY TO PERFORM ON BEHALF OF THE INSURED ALL INVESTI- GATION AND CLAIMS ADJUSTING SERVICES THAT ARE NECESSARY TO FINALIZE ALL CLAIMS INCURRED BY THE INSURED, AND TO MAINTAIN ACCURATE RECORDS OF ALL DETAILS INCIDENT TO SUCH CLAIMS.

### 2.    RETENTION COMPUTATION

THE ANNUAL RETENTION AS DESIGNATED IN ITEM 5 (A) OF THE DECLARATIONS IS A MINIMUM RETENTION ONLY AND IS ADJUSTABLE AS INDICATED IT ITEM 5 (A). AS THE CLOSE OF EACH ANNUAL PERIOD, THE ACTUAL AGGREGATE RETENTION SHALL BE COMPUTED BASED ON THE GROSS REVENUE REPORTED BY THE NAMED INSURED.

### 3.    LOSS PAYMENTS

THIS POLICY IS SOLELY BETWEEN THE COMPANY AND THE INSURED AND ALL PAY-

MENTS SHALL BE MADE TO CLAIMANTS OR OTHERS BY THE INSURED IN HIS NAME, OR ON HIS BEHALF IF SO DIRECTED BY HIM.

WHEN IT HAS BEEN DETERMINED THAT THE COMPANY IS LIABLE UNDER THIS POLICY FOR PAYMENTS MADE IN EXCESS OF THE INSURED RETENTION,

(A)  THE COMPANY WILL PROMPTLY REIMBURSE THE INSURED UPON RECEIPT OF A MONTHLY OR QUARTERLY STATEMENT FROM THE INSURED SHOWING THE AMOUNT OF EXCESS PAID FOR THE PERIOD, OR

(B)  IN THE EVENT OF THE INSURED GOING INTO LIQUIDATION OR BEING OTHER-WISE UNABLE TO MAKE PAYMENTS IN HIS OWN NAME, THE COMPANY WILL MAKE DIRECT TO CLAIMANTS OR OTHERS SUCH PAYMENTS AS WOULD OTHERWISE HAVE BEEN MADE BY THE COMPANY TO THE INSURED, AND THE INSURED AGREES THAT PAYMENT SO MADE BY THE COMPANY TO CLAIMANTS OR OTHERS SHALL BE EQUI-VALENT TO PAYMENT TO THE INSURED.

4.  CLAIMS

THE COMPANY SHALL NOT BE REQUIRED TO ASSUME CHARGE OF THE SETTLEMENT OR DEFENSE OF ANY CLAIM MADE OR SUIT BROUGHT OR PROCEEDINGS INSTITUTED AGAINST THE INSURED BUT RESERVES THE RIGHT TO BE ASSOCIATED WITH THE IN-SURED IN THE DEFENSE OF ANY SUCH CLAIM, SUIT OR PROCEEDINGS, INCLUDING APPEALS TO HIGHER COURTS WHICH, IF THE INSURED FAILS OR REFUSES TO DO SO, MAY BE PROSECUTED IN THE NAME OF THE INSURED BY THE COMPANY, IN WHICH EVENT THE LEGAL COSTS AND EXPENSES OF SUCH APPEAL SHALL BE FOR THE COM-PANY'S OWN ACCOUNT, UNLESS THE INSURED'S FAILURE OR REFUSAL IS IN BAD FAITH.

5.  REPORTS

THE INSURED, OR ON HIS INSTRUCTIONS THE BASIC INSUROR OR THE SERVICE COM-PANY, SHALL FORWARD TO THE COMPANY THE FOLLOWING REPORTS:

(A)  IMMEDIATE WRITTEN NOTICE OF ANY CATASTROPHE OR EVENT THE COST OF WHICH, ADDED TO KNOWN PREVIOUS LOSSES, IS LIKELY TO EXCEED THE IN-SURED'S RETENTION;

(B)  A COMPLETE MONTHLY REPORT OF ALL OCCURRENCES; AND

(C)  A MONTHLY TABULATION OF ALL PAYMENTS MADE AND RESERVES SET UP FOR CLAIM.

6.  SUBROGATION

IF THE COMPANY BECOMES LIABLE FOR ANY PAYMENT UNDER THIS POLICY, THE COM-PANY SHALL BE SUBROGATED, TO THE EXTENT OF SUCH PAYMENT, TO ALL THE RIGHTS AND REMEDIES OF THE INSURED AGAINST ANY PARTY IN RESPECT OF SUCH PAYMENT AND SHALL BE ENTITLED AT ITS OWN EXPENSE TO SUE IN THE NAME OF THE INSURED. THE INSURED SHALL GIVE TO THE COMPANY ALL SUCH ASSISTANCE IN ITS POWER AS THE COMPANY MAY REQUIRE TO SECURE ITS RIGHTS AND REMEDIES AND AT THE COM-



PANY'S REQUEST, SHALL EXECUTE ALL DOCUMENTS NECESSARY TO ENABLE THE
COMPANY EFFECTIVELY TO BRING SUIT IN THE NAME OF THE INSURED.

7.    SELF-INSURORS STATUS

IF APPLICABLE, THE INSURED NAMED IN THE DECLARATIONS HAS DULY QUALIFIED
AS A SELF-INSUROR BY COMPLIANCE WITH THE PROVISIONS OF ANY LAWS RESPECT-
ING SELF-INSURORS IN ALL NECESSARY STATES AND SHALL CONTINUE TO MAINTAIN
SAID STATUS THROUGHOUT THE PERIOD OF THIS POLICY.

8.    FINANCIAL RESPONSIBILITY

THIS POLICY DOES NOT PROVIDE PRIMARY AUTOMOBILE LIABILITY INSURANCE AND IS
NOT INTENDED TO SATISFY ANY FINANCIAL RESPONSIBILITY REQUIREMENTS OF ANY
STATE.

9.    OTHER INSURANCE

THIS POLICY DOES NOT COVER ANY LIABILITY WHICH IS INSURED BY OR WOULD,
BUT FOR THE EXISTENCE OF THIS POLICY, BE INSURED BY ANY OTHER EXISTING
POLICY OR POLICIES EXCEPT IN RESPECT OF ANY EXCESS BEYOND THE AMOUNT WHICH
WOULD HAVE BEEN PAYABLE UNDER SUCH POLICY OR POLICIES HAD THIS POLICY
NOT BEEN IN EFFECT.

10.    ARBITRATION

IF ANY DISPUTE OR CONTROVERSY SHALL RISE BETWEEN THE COMPANY AND THE IN-
SURED WITH RESPECT TO ANY PROVISION IN THIS CONTRACT, IT SHALL BE RE-
FERRED TO TWO ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY, AND SUCH
ARBITRATORS SHALL, BEFORE ENTERING UPON THE CONSIDERATION OF ANY DISPUTE
OR CONTROVERSY, IMMEDIATELY CHOOSE AN UMPIRE. THE DECISION OF ANY TWO
OF THE THREE SHALL BE ABSOLUTELY BINDING UPON THE PARTIES TO THE CONTRACT,
AND THE EXPENSE OF ANY SUCH ARBITRATION PROCEEDING SHALL BE SHARED BY SUCH
PARTIES.  SUCH ARBITRATION SHALL BE CONDUCTED AT ATLANTA, GEORGIA OR AS
OTHERWISE MUTUALLY AGREED UPON.

11.    DECLARATIONS

BY THE ACCEPTANCE OF THIS POLICY THE INSURED AGREES THAT THE STATEMENTS
IN THE DECLARATIONS ARE HIS AGREEMENTS AND REPRESENTATIONS, THAT THIS
POLICY IS ISSUED IN RELIANCE UPON THE TRUTH OF SUCH REPRESENTATIONS AND
THAT THE INSURANCE EMBODIES ALL AGREEMENTS EXISTING BETWEEN ITSELF AND
THE COMPANY RELATING TO THIS POLICY.

                                        STONEWALL INSURANCE COMPANY


                                        _____

                                        AUTHORIZED REPRESENTATIVE

(3)

THE UNDERWRITING FILE

| CO. | CONTRACT | SUB LINE | CLASS | | | C.A. COMM. | BRK'S. COMM. | PRODUCER | STATE |
|-----|----------|----------|-------|--|--|-----------|--------------|----------|-------|

Renewal of **13098113**    Producer: ........................
Rewrite of
Extra Duties:                                               Certified Copies:

In favor of: ........................
Address: ........................

Type of Coverage: ........................

In the amount of: $11,000,000.00

**Term:** Beginning at **12:01 A.M.** on the ...... day of ...... 19 **75**
and ending at **12:01 A.M.** on the ...... day of ...... 19 **75**
Standard time at the place of location of risks insured, and in accordance with terms and
conditions of the form(s) attached and the Standard Clauses on the reverse side of this
page.

**Forms:** At time of issuance this Policy contains a ...... page insuring Form and Endorsements
1 through **N/A** inclusive. Standard Clause **2** shall not apply.

SURPLUS LINES INFORMATION                                  CROSS REFERENCES

| Premium | Due: At Inception | 1st Anniversary | 2nd Anniversary | |
|---------|-------------------|-----------------|-----------------|--|
| PREMIUM | $80,000.00 | $ | $ | ANN'L. REVIEW [ ] |
| State Tax | $ | $ | $ | ADJ [X] |
| Stamping Fee | $ | $ | $ | INST. [ ] |
| Service Fee | $ | $ | $ | |
| Policy Fee | $ | $ | $ | ENTER FIRE [ ] |
| | | | | ENTER QUAKE [ ] |
| TOTAL | $80,000.00 | | | |

Dated at **ATLANTA, GEORGIA**
this **14TH** day of **FEBRUARY** 19 **75**



G. ZANTHOS

MAY 13 1975

RECEIVED APR 14 1975

HOME OFFICE COPY

IT IS UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED
UNDER THIS POLICY IN RESPECT TO WORKMEN'S COMPENSATION
IN THE STATE OF CALIFORNIA.

IN CONSIDERATION OF THE ABOVE IT IS UNDERSTOOD AND AGREED
THAT ITEM 5. AGGREGATE INSURANCE SUBSECTION (A) "EXPIRATION",
OF THE SCHEDULE FORMING PART OF THIS POLICY, WILL BE REDUCED
BY THE LOSSES APPLICABLE TO WORKMEN'S COMPENSATION IN THE
STATE OF CALIFORNIA.

SIGNED AND ACCEPTED

_____
                                    NAMED INSURED

FEB 2 1976

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No.    36000002

Issued To:            STONEMAKER-WORTHINGTON, INC., ET AL

Effective Date:       JANUARY 1, 1975

Endorsement No.:      5                      STONEWALL INSURANCE COMPANY

GLA 12E(99)E474                              By _____

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

## P O L I C Y   O F   A G G R E G A T E   I N S U R A N C E

### SCHEDULE

1. **INSURED:** STUDEBAKER - WORTHINGTON, INCORPORATED AND ALL SUBSIDIARIES OR DIVISIONS AS MAY NOW OR HEREAFTER BE CONSTITUTED.

2. **ADDRESS:** 530 FIFTH AVENUE
NEW YORK, NEW YORK 10036

3. **EFFECTIVE DATE:** JANUARY 1, 1975

4. **EXPIRATION DATE:** JANUARY 1, 1976

5. **AGGREGATE INSURANCE:**

   (A) RETENTION: $3,000,000 TO BE ADJUSTED ON GROSS REVENUE, AT A RATE OF $1,875 PER $1,000,000 REVENUE

   (B) INSURANCE LIMIT: $11,000,000.00

   (C) LOSS LIMITATION PER OCCURRENCE: $100,000 EACH OCCURRENCE, GENERAL LIABILITY
   AND
   $100,000 EACH OCCURRENCE, AUTOMOBILE LIABILITY
   AND
   $100,000 EACH OCCURRENCE, WORKMEN'S COMPENSATIC

6. **PREMIUM:** $80,000.00 FLAT ANNUAL

7. BASIC INSURANCE CARRIER OR SERVICE COMPANY: INSURANCE COMPANY OF NORTH AMERICA
   (1) COMPREHENSIVE GENERAL - AUTOMOBILE LIABILITY POLICY

   (2) WORKMEN'S COMPENSATION AND EMPLOYER'S LIABILITY POLICY

### STONEWALL INSURANCE COMPANY
### BIRMINGHAM, ALABAMA

## POLICY OF AGGREGATE INSURANCE

THIS IS A POLICY OF AGGREGATE INSURANCE ISSUED BY THE STONEWALL INSURANCE COMPANY (HEREIN CALLED THE COMPANY) TO THE PARTY OR PARTIES NAMED IN THE DECLARATIONS MADE A PART HEREOF (HEREIN CALLED THE INSURED).

WHEREAS, CERTAIN INSURORS HAVE ISSUED TO THE INSURED POLICIES OF INSURANCE DESCRIBED IN ITEM 7 OF THE SCHEDULE (WHICH POLICIES INCLUDING RENEWALS OR REPLACEMENTS THEREOF, ARE HEREIN CALLED THE BASIC INSURANCE), AND WHEREAS THE INSURED HAS PAID THE PREMIUM STATED HEREIN.

NOW, THIS POLICY TO THE EXTENT AND IN THE MANNER HEREINAFTER PROVIDED, IS TO INDEMNIFY THE INSURED FOR LOSS SUSTAINED DURING THE PERIOD OF THE POLICY, SUBJECT TO THE TERMS AND CONDITIONS OF INSURANCE POLICIES SET OUT IN ITEM 7 OF THE SCHEDULE, WITH THE EXCEPTION OF LIMITS OF LIABILITY AND DEDUCTIBLE CLAUSES, OR WHERE AMENDED BY ENDORSEMENT ATTACHED HERETO.

PROVIDED THAT THE COMPANY'S LIMIT OF LIABILITY UNDER THIS POLICY IS LIMITED TO THE AMOUNT SPECIFIED IN ITEM 5 (B) OF THE SCHEDULE, BUT ONLY IN EXCESS OF AND AFTER THE INSURED, UNDER THE CONDITIONS HEREOF, HAS INCURRED DEFINITE LEGAL LIABILITY SO AS TO EXPEND THE INSURED'S RETENTION AS STATED IN ITEM 5 (A) OF THE SCHEDULE, SUBJECT IN ALL INSTANCES TO A MAXIMUM EXPENDITURE PER OCCURRENCE AS SET OUT IN ITEM 5 (C) OF THE SCHEDULE.

EXPENDITURES, AS USED IN THE FOREGOING PARAGRAPH SHALL INCLUDE ONLY PAYMENTS ACTUALLY MADE BY OR FOR THE INSURED OR FOR WHICH THE INSURED HAS DEFINITE LEGAL LIABILITY, SPECIFICALLY EXCLUDING ANY LEGAL OR ADJUSTMENT COSTS.

### CONDITIONS

#### 1.   BASIC INSURANCE OR SERVICE COMPANY

IT IS A CONDITION PRECEDENT TO THE COMPANY'S DUTY TO INDEMNIFY THAT THE INSURED HAS ENGAGED THE SERVICES OF A BASIC INSUROR OR A SERVICE COMPANY APPROVED BY THE COMPANY TO PERFORM ON BEHALF OF THE INSURED ALL INVESTIGATION AND CLAIMS ADJUSTING SERVICES THAT ARE NECESSARY TO FINALIZE ALL CLAIMS INCURRED BY THE INSURED, AND TO MAINTAIN ACCURATE RECORDS OF ALL DETAILS INCIDENT TO SUCH CLAIMS.

#### 2.   RETENTION COMPUTATION

THE ANNUAL RETENTION AS DESIGNATED IN ITEM 5 (A) OF THE DECLARATIONS IS A MINIMUM RETENTION ONLY AND IS ADJUSTABLE AS INDICATED IN ITEM 5 (A).  AT THE CLOSE OF EACH ANNUAL PERIOD, THE ACTUAL AGGREGATE RETENTION SHALL BE COMPUTED BASED ON THE GROSS REVENUE REPORTED BY THE NAMED INSURED.

#### 3.   LOSS PAYMENTS

THIS POLICY IS SOLELY BETWEEN THE COMPANY AND THE INSURED AND ALL PAYMENTS

SHALL BE MADE TO CLAIMANTS OR OTHERS BY THE INSURED IN HIS NAME, OR ON HIS
BEHALF IF SO DIRECTED BY HIM.

WHEN IT HAS BEEN DETERMINED THAT THE COMPANY IS LIABLE UNDER THIS POLICY FOR
PAYMENTS MADE IN EXCESS OF THE INSURED RETENTION,

    (A)  THE COMPANY WILL PROMPTLY REIMBURSE THE INSURED UPON RECEIPT OF A
        MONTHLY OR QUARTERLY STATEMENT FROM THE INSURED SHOWING THE AMOUNT
        OF EXCESS PAID FOR THE PERIOD, OR

    (B)  IN THE EVENT OF THE INSURED GOING INTO LIQUIDATION OR BEING OTHER-
        WISE UNABLE TO MAKE PAYMENTS IN HIS OWN NAME, THE COMPANY WILL MAKE
        DIRECT TO CLAIMANTS OR OTHERS SUCH PAYMENTS AS WOULD OTHERWISE HAVE
        BEEN MADE BY THE COMPANY TO THE INSURED, AND THE INSURED AGREES THAT
        PAYMENT SO MADE BY THE COMPANY TO CLAIMANTS OR OTHERS SHALL BE EQUI-
        VALENT TO PAYMENT TO THE INSURED.

## 4. CLAIMS

THE COMPANY SHALL NOT BE REQUIRED TO ASSUME CHARGE OF THE SETTLEMENT OR DEFENSE
OF ANY CLAIM MADE OR SUIT BROUGHT OR PROCEEDINGS INSTITUTED AGAINST THE INSURED
BUT RESERVES THE RIGHT TO BE ASSOCIATED WITH THE INSURED IN THE DEFENSE OF
ANY SUCH CLAIM, SUIT OR PROCEEDINGS, INCLUDING APPEALS TO HIGHER COURTS WHICH,
IF THE INSURED FAILS OR REFUSES TO DO SO, MAY BE PROSECUTED IN THE NAME OF
THE INSURED BY THE COMPANY, IN WHICH EVENT THE LEGAL COSTS AND EXPENSES OF SUCH
APPEAL SHALL BE FOR THE COMPANY'S OWN ACCOUNT, UNLESS THE INSURED'S FAILURE
OR REFUSAL IS IN BAD FAITH.

## 5. REPORTS

THE INSURED, OR ON HIS INSTRUCTIONS THE BASIC INSUROR OR THE SERVICE COMPANY,
SHALL FORWARD TO THE COMPANY THE FOLLOWING REPORTS:

    (A)  IMMEDIATE WRITTEN NOTICE OF ANY CATASTROPHE OR EVENT THE COST OF
        WHICH, ADDED TO KNOWN PREVIOUS LOSSES, IS LIKELY TO EXCEED THE IN-
        SURED'S RETENTION;

    (B)  A COMPLETE QUARTERLY REPORT OF ALL OCCURRENCES; AND

    (C)  A QUARTERLY TABULATION OF ALL PAYMENTS MADE AND RESERVES SET UP FOR
        CLAIM.

## 6. SUBROGATION

IF THE COMPANY BECOMES LIABLE FOR ANY PAYMENT UNDER THIS POLICY, THE COMPANY
SHALL BE SUBROGATED, TO THE EXTENT OF SUCH PAYMENT, TO ALL THE RIGHTS AND REM-
EDIES OF THE INSURED AGAINST ANY PARTY IN RESPECT OF SUCH PAYMENT AND SHALL
BE ENTITLED AT ITS OWN EXPENSE TO SUE IN THE NAME OF THE INSURED. THE INSURED
SHALL GIVE TO THE COMPANY ALL SUCH ASSISTANCE IN ITS POWER AS THE COMPANY MAY
REQUIRE TO SECURE ITS RIGHTS AND REMEDIES AND AT THE COMPANY'S REQUEST, SHALL
EXECUTE ALL DOCUMENTS NECESSARY TO ENABLE THE COMPANY EFFECTIVELY TO BRING
SUIT IN THE NAME OF THE INSURED.

## 7. SELF-INSUROR'S STATUS

IF APPLICABLE, THE INSURED NAMED IN THE DECLARATIONS HAS DULY QUALIFIED AS
A SELF-INSUROR BY COMPLIANCE WITH THE PROVISIONS OF ANY LAWS RESPECTING SELF-

INSURORS IN ALL NECESSARY STATES AND SHALL CONTINUE TO MAINTAIN SAID STATUS
THROUGHOUT THE PERIOD OF THIS POLICY.

## 8. FINANCIAL RESPONSIBILITY

THIS POLICY DOES NOT PROVIDE PRIMARY AUTOMOBILE LIABILITY INSURANCE AND IS NOT
INTENDED TO SATISFY ANY FINANCIAL RESPONSIBILITY REQUIREMENTS OF ANY STATE.

## 9. OTHER INSURANCE

THIS POLICY DOES NOT COVER ANY LIABILITY WHICH IS INSURED BY OR WOULD, BUT
FOR THE EXISTENCE OF THIS POLICY, BE INSURED BY ANY OTHER EXISTING POLICY OR
POLICIES EXCEPT IN RESPECT OF ANY EXCESS BEYOND THE AMOUNT WHICH WOULD HAVE
BEEN PAYABLE UNDER SUCH POLICY OR POLICIES HAD THIS POLICY NOT BEEN IN EFFECT.

## 10. ARBITRATION

IF ANY DISPUTE OR CONTROVERSY SHALL ARISE BETWEEN THE COMPANY AND THE INSURED
WITH RESPECT TO ANY PROVISION IN THIS CONTRACT, IT SHALL BE REFERRED TO TWO
ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY, AND SUCH ARBITRATORS SHALL, BEFORE
ENTERING UPON THE CONSIDERATION OF ANY DISPUTE OR CONTROVERSY, IMMEDIATELY
CHOOSE AN UMPIRE. THE DECISION OF ANY TWO OF THE THREE SHALL BE ABSOLUTELY
BINDING UPON THE PARTIES TO THE CONTRACT, AND THE EXPENSE OF ANY SUCH ARBITRA-
TION PROCEEDING SHALL BE SHARED BY SUCH PARTIES. SUCH ARBITRATION SHALL BE
CONDUCTED AT ATLANTA, GEORGIA OR AS OTHERWISE MUTUALLY AGREED UPON.

## 11. DECLARATIONS

BY THE ACCEPTANCE OF THIS POLICY THE INSURED AGREES THAT THE STATEMENTS IN THE
DECLARATIONS ARE HIS AGREEMENTS AND REPRESENTATIONS, THAT THIS POLICY IS ISSUED
IN RELIANCE UPON THE TRUTH OF SUCH REPRESENTATIONS AND THAT THE INSURANCE EM-
BODIES ALL AGREEMENTS EXISTING BETWEEN ITSELF AND THE COMPANY RELATING TO THIS
POLICY.

UNDERWRITING INFORMATION
SEE INFORMATION ATTACHED

POLICY INFORMATION

| 2336 | | | 99 | | NIL | 7812 | 31 |
|------|--|--|----|--|-----|------|----|
| CO. | CONTRACT | SUB LINE. | CLASS | Maj.Line | G.A. COMM. | BRK'S. COMM. | PRODUCER | STATE | OFF. |

Renewal of: 36000002      Producer      **ALEXANDER AND ALEXANDER**
Rewrite of:                              **1185 AVENUE OF THE AMERICAS**      Certified Copies:
Extra Dailies:                           **NEW YORK, NEW YORK 10036**

In favor of: **STUDEBAKER-WORTHINGTON, INC.**
Address:     **530 FIFTH AVENUE**
             **NEW YORK, NEW YORK 10036**

Type of Coverage: **AGGREGATE STOP LOSS INSURANCE**
**$5,000,000 EXCESS - A) RETENTION $1,500,000 TO BE ADJUSTED** AT **A RATE** OF .15
In the amount of: PER $1,000 **GROSS REVENUE - B) LOSS LIMITATION PER**
**OCCURRENCE $100,000 GENERAL LIABILITY, $100,000 AUTO**

Term:    Beginning at: **12:01 A.M.** on the **1st** day of **JANUARY** 1976
         and ending at **12:01 A.M.** on the **1st** day of **JANUARY** 1977
         Standard time at the place of location of risks insured, and in accordance with terms and
         conditions of the form(s) attached and the Standard Clauses on the reverse side of this
         page.

Forms:   At time of issuance this Policy contains a ___ page insuring Form and Endorsements
         1 through ___ inclusive. Standard Clause ___ shall not apply.

SURPLUS LINES INFORMATION                                         CROSS REFERENCES

Premium:          Due:    At Inception    1st Anniversary    2nd Anniversary

| | PREMIUM | $240,000.00 | | $ | |
|--|---------|-------------|--|---|--|
| | State Tax | $ | | $ | ANNL. REVIEW |
| | Stamping Fee | $ | | $ | |
| | Service Fee | $ | | $ | INS. |
| | Policy Fee | $ | | $ | ENTER FILE |
| | | | | | ENTER CLM. |
| | TOTAL | $ 240,000.00 | | $ | |

Dated at **LOS ANGELES, CALIFORNIA**
this **23rd** day of **FEBRUARY** 19 **76**
                                    L3/00

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

P O L I C Y   O F   A G G R E G A T E   I N S U R A N C E

THIS IS A POLICY OF AGGREGATE INSURANCE ISSUED BY THE STONEWALL INSURANCE
COMPANY (HEREIN CALLED THE COMPANY) TO THE PARTY OR PARTIES NAMED IN THE
DECLARATIONS MADE A PART HEREOF (HEREIN CALLED THE INSURED).

WHEREAS, CERTAIN INSURORS HAVE ISSUED TO THE INSURED POLICIES OF INSURANCE
DESCRIBED IN ITEM 7 OF THE SCHEDULE (WHICH POLICIES INCLUDING RENEWALS OR
REPLACEMENTS THEREOF, ARE HEREIN CALLED THE BASIC INSURANCE), AND WHEREAS
THE INSURED HAS PAID THE PREMIUM STATED HEREIN.

NOW THIS POLICY TO THE EXTENT AND IN THE MANNER HEREINAFTER PROVIDED, IS TO
INDEMNIFY THE INSURED FOR LOSS SUSTAINED DURING THE PERIOD OF THE POLICY,
SUBJECT TO THE TERMS AND CONDITIONS OF INSURANCE POLICIES SET OUT IN ITEM 7
OF THE SCHEDULE, WITH THE EXCEPTION OF LIMITS OF LIABILITY AND DEDUCTIBLE
CLAUSES, OR WHERE AMENDED BY ENDORSEMENT ATTACHED HERETO.

PROVIDED THAT THE COMPANY'S LIMIT OF LIABILITY UNDER THIS POLICY IS LIMITED
TO THE AMOUNT SPECIFIED IN ITEM 5 (B) OF THE SCHEDULE, BUT ONLY IN EXCESS
OF AND AFTER THE INSURED, UNDER THE CONDITIONS HEREOF, HAS INCURRED DEFINITE
LEGAL LIABILITY SO AS TO EXPEND THE INSURED'S RETENTION AS STATED IN ITEM 5
(A) OF THE SCHEDULE, SUBJECT IN ALL INSTANCES TO A MAXIMUM EXPENDITURE
PER OCCURRENCE AS SET OUT IN ITEM 5 (C) OF THE SCHEDULE.

EXPENDITURES, AS USED IN THE FOREGOING PARAGRAPH SHALL INCLUDE ONLY PAYMENTS
ACTUALLY MADE BY OR FOR THE INSURED OR FOR WHICH THE INSURED HAS DEFINITE
LEGAL LIABILITY, SPECIFICALLY EXCLUDING ANY LEGAL OR ADJUSTMENT COSTS.

CONDITIONS

1. BASIC INSURANCE OR SERVICE COMPANY

   IT IS A CONDITION PRECEDENT TO THE COMPANY'S DUTY TO INDEMNIFY THAT THE
   INSURED HAS ENGAGED THE SERVICES OF A BASIC INSUROR OR A SERVICE COMPANY
   APPROVED BY THE COMPANY TO PERFORM ON BEHALF OF THE INSURED ALL INVESTI-
   GATION AND CLAIMS ADJUSTING SERVICES THAT ARE NECESSARY TO FINALIZE ALL
   CLAIMS INCURRED BY THE INSURED, AND TO MAINTAIN ACCURATE RECORDS OF ALL
   DETAILS INCIDENT TO SUCH CLAIMS.

2. RETENTION COMPUTATION

   THE ANNUAL RETENTION AS DESIGNATED IN ITEM 5 (A) OF THE DECLARATIONS IS
   A MINIMUM RETENTION ONLY AND IS ADJUSTABLE AS INDICATED IN ITEM 5 (A).
   AS THE CLOSE OF EACH ANNUAL PERIOD, THE ACTUAL AGGREGATE RETENTION SHALL
   BE COMPUTED BASED ON THE GROSS REVENUE REPORTED BY THE NAMED INSURED.

3.  LOSS PAYMENTS

THIS POLICY IS SOLELY BETWEEN THE COMPANY AND THE INSURED AND ALL PAYMENTS
SHALL BE MADE TO CLAIMANTS OR OTHERS BY THE INSURED IN HIS NAME, OR ON
HIS BEHALF IF SO DIRECTED BY HIM.

WHEN IT HAS BEEN DETERMINED THAT THE COMPANY IS LIABLE UNDER THIS POLICY
FOR PAYMENTS MADE IN EXCESS OF THE INSURED RETENTION.

(A)  THE COMPANY WILL PROMPTLY REIMBURSE THE INSURED UPON RECEIPT OF A
     MONTHLY OR QUARTERLY STATEMENT FROM THE INSURED SHOWING THE AMOUNT
     OF EXCESS PAID FOR THE PERIOD, OR

(B)  IN THE EVENT OF THE INSURED GOING INTO LIQUIDATION OR BEING OTHER-
     WISE UNABLE TO MAKE PAYMENTS IN HIS OWN NAME, THE COMPANY WILL MAKE
     DIRECT TO CLAIMANTS OR OTHERS SUCH PAYMENTS AS WOULD OTHERWISE HAVE
     BEEN MADE BY THE COMPANY TO THE INSURED, AND THE INSURED AGREES THAT
     PAYMENT SO MADE BY THE COMPANY TO CLAIMANTS OR OTHERS SHALL BE
     EQUIVALENT TO PAYMENT TO THE INSURED.

4.  CLAIMS

THE COMPANY SHALL NOT BE REQUIRED TO ASSUME CHARGE OF THE SETTLEMENT OR
DEFENSE OF ANY CLAIM MADE OR SUIT BROUGHT OR PROCEEDINGS INSTITUTED
AGAINST THE INSURED BUT RESERVES THE RIGHT TO BE ASSOCIATED WITH THE
INSURED IN THE DEFENSE OF ANY SUCH CLAIM, SUIT OR PROCEEDINGS, INCLUDING
APPEALS TO HIGHER COURTS WHICH, IF THE INSURED FAILS OR REFUSES TO DO
SO, MAY BE PROSECUTED IN THE NAME OF THE INSURED BY THE COMPANY, IN
WHICH EVENT THE LEGAL COSTS AND EXPENSES OF SUCH APPEAL SHALL BE FOR
THE COMPANY'S OWN ACCOUNT, UNLESS THE INSURED'S FAILURE OR REFUSAL IS
IN BAD FAITH.

5.  REPORTS

THE INSURED, OR ON HIS INSTRUCTIONS THE BASIC INSUROR OR THE SERVICE
COMPANY SHALL FORWARD TO THE COMPANY THE FOLLOWING REPORTS:

(A)  IMMEDIATE WRITTEN NOTICE OF ANY CATASTROPHE OR EVENT THE COST OF
     WHICH, ADDED TO KNOWN PREVIOUS LOSSES, IS LIKELY TO EXCEED THE
     INSURED'S RETENTION;

(B)  A COMPLETE MONTHLY REPORT OF ALL OCCURRENCES; AND

(C)  A MONTHLY TABULATION OF ALL PAYMENTS MADE AND RESERVES SET UP FOR
     CLAIM.

6.  SUBROGATION

IF THE COMPANY BECOMES LIABLE FOR ANY PAYMENT UNDER THIS POLICY, THE
COMPANY SHALL BE SUBROGATED, TO THE EXTENT OF SUCH PAYMENT, TO ALL THE
RIGHTS AND REMEDIES OF THE INSURED AGAINST ANY PARTY IN RESPECT OF SUCH
PAYMENT AND SHALL BE ENTITLED AT ITS OWN EXPENSE TO SUE IN THE NAME OF
THE INSURED.  THE INSURED SHALL GIVE TO THE COMPANY ALL SUCH ASSISTANCE

IN ITS POWER AS THE COMPANY MAY REQUIRE TO SECURE ITS RIGHTS AND REMEDIES
AND AT THE COMPANY'S REQUEST, SHALL EXECUTE ALL DOCUMENTS NECESSARY
TO ENABLE THE COMPANY EFFECTIVELY TO BRING SUIT IN THE NAME OF THE
INSURED.

7. SELF-INSURORS STATUS

IF APPLICABLE, THE INSURED NAMED IN THE DECLARATIONS HAS DULY QUALIFIED
AS A SELF-INSUROR BY COMPLIANCE WITH THE PROVISIONS OF ANY LAWS RESPECT-
ING SELF-INSURORS IN ALL NECESSARY STATES AND SHALL CONTINUE TO MAINTAIN
SAID STATUS THROUGHOUT THE PERIOD OF THIS POLICY.

8. FINANCIAL RESPONSIBILITY

THIS POLICY DOES NOT PROVIDE PRIMARY AUTOMOBILE LIABILITY INSURANCE
AND IS NOT INTENDED TO SATISFY ANY FINANCIAL RESPONSIBILITY REQUIREMENTS
OF ANY STATE.

9. OTHER INSURANCE

THIS POLICY DOES NOT COVER ANY LIABILITY WHICH IS INSURED BY OR WOULD,
BUT FOR THE EXISTENCE OF THIS POLICY BE INSURED BY ANY OTHER EXISTING
POLICY OR POLICIES EXCEPT IN RESPECT OF ANY EXCESS BEYOND THE AMOUNT
WHICH WOULD HAVE BEEN PAYABLE UNDER SUCH POLICY OR POLICIES HAD THIS
POLICY NOT BEEN IN EFFECT.

10. ARBITRATION

IF ANY DISPUTE OR CONTROVERSY SHALL RISE BETWEEN THE COMPANY AND THE
INSURED WITH RESPECT TO ANY PROVISION IN THIS CONTRACT, IT SHALL BE
REFERRED TO TWO ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY, AND SAID
ARBITRATORS SHALL, BEFORE ENTERING UPON THE CONSIDERATION OF ANY DISPUTE
OR CONTROVERSY, IMMEDIATELY CHOOSE AND UMPIRE, THE DECISION OF ANY TWO
OF THE THREE SHALL BE ABSOLUTELY BINDING UPON THE PARTIES TO THE CONTRACT,
AND THE EXPENSE OF ANY SUCH ARBITRATION PROCEEDING SHALL BE SHARED BY
SUCH PARTIES, SUCH ARBITRATION SHALL BE CONDUCTED AT NEW YORK, NEW YORK
OR AS OTHERWISE MUTUALLY AGREED UPON.

11. DECLARATIONS

BY THE ACCEPTANCE OF THIS POLICY THE INSURED AGREES THAT THE STATEMENTS
IN THE DECLARATIONS ARE HIS AGREEMENTS AND REPRESENTATIONS, THAT THIS
POLICY IS ISSUED IN RELIANCE UPON THE TRUTH OF SUCH REPRESENTATIONS AND
AND THAT THE INSURANCE EMBODIES ALL AGREEMENTS EXISTING BETWEEN ITSELF
AND THE COMPANY RELATING TO THIS POLICY.

STONEWALL INSURANCE COMPANY

BY: _____

CERTIFICATE NUMBER

C-200454

## CERTIFICATE OF FACULTATIVE REINSURANCE

# INTEREMCO, INC.

666 STEAMBOAT ROAD

GREENWICH, CONNECTICUT 06830

(203) 661-0300    TELEX 965845

FOR

### SERVICE FIRE INSURANCE COMPANY OF NEW YORK

CEDING CO. AND ADDRESS

Stonewall Insurance Company
c/o Dependable Insurance Associates
P.O. Box 7673
Atlanta, Georgia 30309

ATTENTION William J. Greene, Jr.

## DECLARATIONS

| INSURED | STUDEBAKER - WORTHINGTON INC. | RENEWING CERTIFICATE | |
|---|---|---|---|
| CITY | New York, New York | REPLACING CERTIFICATE | |
| COMPANY POLICY NUMBER | 33000113 | CO. POLICY PERIOD | 1/1/74 – 1/1/75 |

**ITEM 1**
**TYPE OF INSURANCE**
Excess of Aggregate-General Liability, Auto Liab., & Workmen's Compensation

**ITEM 2**
**POLICY LIMITS AND APPLICATIONS**
$10,000,000 Annual Aggregate excess of $1,000,000 annual aggregate which is excess of Underlying Insurance.

**ITEM 3**
**COMPANY RETENTION**
$9,000,000 Annual Aggregate part of $10,000,000.

**ITEM 4**
**REINSURANCE ACCEPTED**
$1,000,000 Annual Aggregate part of $10,000,000.

OCT 28 1974

**ITEM 5**
**BASIS OF REINSURANCE**
Contributing Excess

**ITEM 6**
**CANCELLATION**
45    DAYS NOTICE

| CERTIFICATE PERIOD | January 1, 1974 to January 1, 1975 | | | | |
|---|---|---|---|---|---|
| PREMIUM THIS CERTIFICATE | $1,631.25 | ☒ FIXED | ☐ DEPOSIT | CED COMM. | NET % |

| INSTALLMENTS PAYABLE | ESTIMATED PREMIUM BASE | RATE | EST. PREM. |
|---|---|---|---|
| | | | |

| AUDIT PERIOD | NIL | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | |
|---|---|---|---|

INTEREMCO, INC.
REINSURANCE MANAGER FOR
SERVICE FIRE INSURANCE COMPANY OF NEW YORK

DATE    August 20, 1974    CF/cs    BY

AUTHORIZED SIGNATURE

# **INTEREMCO, INC.**

666 STEAMBOAT ROAD,
GREENWICH, CONNECTICUT 06830
(203) 661-0300  •  TELEX 965845

FOR

### **NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**

Attached to and forming part of Certificate #    C-00454

Effective Date:    April 1, 1974

Insured:  STUDEBAKER – WORTHINGTON INC.

Ceding Company:  Stonewall Insurance Company

### CHANGE IN COMPANY NAME RIDER

Wherever the name Service Fire Insurance Company of New York appears in the certificate attached, it shall be construed to mean North American Company for Property and Casualty Insurance.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, agreements of limitations of the above mentioned certificate than as above stated.



INTEREMCO, INC. for
North American Company for Property
and Casualty Insurance

_____
Authorized  Signature

CP/cs – 8/20/74

Form 101



# REINSURANCE CERTIFICATE

REINSURANCE CEDED TO AND ASSUMED BY

## NORTH AMERICAN COMPANY

### FOR PROPERTY AND CASUALTY INSURANCE

THRU

### BURT AND SCHELD, INC. – FACULTATIVE MANAGERS

146 SOUTH ATLANTIC AVENUE, ORMOND BEACH, FLORIDA 32074

Nº 2697

Mr. William J. Greene, Jr.
Dependable Insurance Associates, Inc.
P. O. Box 7673
Atlanta, Georgia 30309

ACCOUNTING CODE **F1125**

CEDING COMMISSION **17½** %

1. NORTH AMERICAN COMPANY For Property And Casualty Insurance (herein called the Reinsurer) does hereby Reinsure

   **Stonewall Insurance Company**      **Birmingham, Alabama**

   CEDING COMPANY

   (herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows:

2. Name And Address Of Insured: **Studebaker – Worthington, Inc., etal.**      **New York, New York**

3. Policy No.: **36 000 002**    Effective From: **January 1, 1975**   To: **January 1, 1976**
   (12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

4. Reinsurance Period:    Effective From: **January 1, 1975**   To: **January 1, 1976**
   (12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

5. DETAILS OF REINSURANCE AFFORDED:

| SECTION I TYPE OF INSURANCE | SECTION II POLICY LIMITS AND APPLICATION | SECTION III COMPANY RETENTION | SECTION IV REINSURANCE ACCEPTED | SECTION V BASIS OF ACCEPTANCE |
|---|---|---|---|---|
| Excess Aggregate Compensative General and Automobile Liability including Workmen's Compensation and Employers' Liability | $11,000,000 excess 3,000,000 aggregate loss fund | Various | $2,000,000 part of 10,000,000 excess 1,000,000 excess 3,000,000 | Contributing Excess of Loss |

6. Reinsurance Premium Computation

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREMIUM |
|---|---|---|---|
| **Flat** | | | |

Deposit Premium $ **4,000.00**      Minimum Premium $ **4,000.00**

### PREMIUM IF PAID IN INSTALLMENTS

| EFFECTIVE DATE | 1ST ANNIVERSARY | 2ND ANNIVERSARY | TOTAL PREMIUM | |
|---|---|---|---|---|
| | | | | |

7. Audit Period: **None**

BURT AND SCHELD, INC.

AUTHORIZED SIGNATURE

SEE BACK OF CERTIFICATE FOR ADDITIONAL
TERMS AND CONDITIONS.

8.  The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section II. of 5 above, and the liability of the Reinsurer specified in Section IV of 5 above shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of the Reinsurer or Burt and Scheld, Inc. at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

9.  Prompt notice shall be given to the Reinsurer, thru Burt and Scheld, Inc., by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

10. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

11. Payment of its proportion of loss and expense paid by the Company will be made by Burt and Scheld, Inc., for the Reinsurer, to the Company promptly following receipt of proof of loss.

12. The Reinsurer will be paid or credited by the Company with its proportion of salvages, i. e., reimbursement obtained or recovery made by the Company, less the actual cost, excluding Company salaries and office expenses, of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

13. The Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

14. In the event of insolvency of the Company, the terms of this Certificate are amended to conform to the statute of any state of the United States having jurisdiction to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that, subject to such amendment, the Reinsurer may avail itself of any other provision of any such statute applicable.

15. Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N. Y., unless some other location is mutually agreed upon by the two parties in interest.

16. Cancellation of the Ceding Company's policy shall constitute automatic cancellation of this Certificate and the Reinsurance provided by same. Cancellation may also be accomplished on a pro-rata basis by either the Ceding Company or its Representative, or Burt and Scheld, Inc., mailing or delivering to the other written notice stating when such cancellation shall be effective, except that when cancellation is instituted by Burt and Scheld, Inc., the effective date shall not be prior to thirty (30) days from the date of the notice.

17. The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

In witness whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

## NOTICE

PREMIUMS, COPIES OF POLICIES & ENDORSEMENTS, NOTICES & PROOFS OF LOSS, SALVAGES & RECOVERIES, NOTICES OF CANCELLATION AND ALL COMMUNICATIONS OF ANY KIND IN CONNECTION WITH THIS CERTIFICATE SHALL BE TRANSMITTED TO THE REINSURER THRU

**BURT AND SCHELD, INC.**

**146 SOUTH ATLANTIC AVENUE**

**ORMOND BEACH, FLORIDA 32074**

# CERTIFICATE OF FACULTATIVE REINSURANCE

**CERTIFICATE NUMBER** C-00753

# INTEREMCO, INC.

666 STEAMBOAT ROAD
GREENWICH, CONNECTICUT 06830
(203) 661-0300 • TELEX 965845

FOR

## NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE

**CEDING CO. AND ADDRESS**

Stonewall Insurance Company
c/o Dependable Insurance Associates, Inc.
   P.O. Box 7673
   Atlanta, Georgia  30309

APR 14 1975

**ATTENTION**  Mr. William Greene

### DECLARATIONS

| | | | |
|---|---|---|---|
| **INSURED** | STUDEBAKER-WORTHINGTON INC., ET AL | **RENEWING CERTIFICATE** | C-00454 |
| **CITY** | New York, New York | **REPLACING CERTIFICATE** | |
| **COMPANY POLICY NUMBER** | 36000002 | **CO. POLICY PERIOD** | 1/1/75 - 1/1/76 |

| | |
|---|---|
| **ITEM 1**<br>**TYPE OF INSURANCE** | Aggregate Insurance |
| **ITEM 2**<br>**POLICY LIMITS AND APPLICATIONS** | $11,000,000 excess of $3,000,000 Fund |
| **ITEM 3**<br>**COMPANY RETENTION** | $3,000,000 part of $11,000,000 excess of $3,000,000 Fund |
| **ITEM 4**<br>**REINSURANCE ACCEPTED** | $1,000,000 part of $10,000,000 excess $1,000,000 excess $3,000,000 Fund |
| **ITEM 5**<br>**BASIS OF REINSURANCE** | Contributing Excess |
| **ITEM 6**<br>**CANCELLATION** | 30    DAYS NOTICE |

APR 28 1975

| **CERTIFICATE PERIOD** | January 1, 1975 to January 1, 1976 | | | |
|---|---|---|---|---|
| **PREMIUM THIS CERTIFICATE** | $1,650.00 | ☒ FIXED   ☐ DEPOSIT | **CED COMM.** | Net |

| INSTALLMENTS PAYABLE | ESTIMATED PREMIUM BASE | RATE | EST. PREM. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| **AUDIT PERIOD** | Nil | MINIMUM PREMIUM - FOR REINSURANCE PERIOD | $1,650.00 |
|---|---|---|---|

INTEREMCO, INC.
REINSURANCE MANAGER FOR
**NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**

**DATE**  April 10, 1975      JMS:jr      **BY**

**AUTHORIZED SIGNATURE**

**FORM 98 4/74**

**INTEREMCO, INC.**
REINSURANCE MANAGER FOR
**NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**
(hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declaration made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's Policy as follows:

**REINSURING AGREEMENTS AND CONDITIONS**

**A. RETENTION AND APPLICATION OF LIABILITY.** The Company warrants to retain for its own account or that of its treaty and/or facultative reinsurers the amount of liability specified in ITEM 3 of the Declarations and the liability of the Reinsurer specified in ITEM 4 of said Declarations shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's Policy. The Company shall furnish the Reinsurer with a copy of its Policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith. The terms of this Certificate shall not be waived or changed except by written endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**B. NOTICE OF OCCURRENCE.** Prompt notice shall be given the Reinsurer by the Company of any occurrence or accident which appears likely to involve loss to this reinsurance and consideration of the liability of the Company shall not affect the giving of this notice.

**C. DEFENSE OF CLAIMS OR SUITS.** While the Reinsurer does not undertake to investigate or defend claims or suits it shall, nevertheless, have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim with full cooperation of the Company.

**D. LOSS PAYABLE.** All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgement or award. Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer promptly following receipt of proof of loss.

**E. SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company. less actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**F. TAXES.** The Company will be liable for all taxes, other than income taxes, on premiums ceded to the Reinsurer under this Certificate.

**G. INSOLVENCY.** In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and conduct, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to Court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

**H. NUCLEAR EXCLUSION.** This Certificate is subject to the standard Nuclear Incident Exclusion Clause — Liability — Reinsurance.

**I. CANCELLATION.** Cancellation of the Policy of the Company shall constitute automatic pro rata cancellation of this Certificate. The Certificate may also be cancelled by either party giving written notice of not less than the number of days specified in ITEM 6 of the Declarations to the other party. If cancelled by the Company, without simultaneous cancellation of the Policy, adjustment of premium shall be on the short rate basis. If cancelled by the Reinsurer, adjustment of premium shall be on the pro rata basis. Short rate and pro rata cancellations shall be based upon final adjusted premiums.

**In Witness Whereof,** Interemco, Inc. has caused this Reinsurance Certificate to be signed by its President and Secretary at Greenwich, Conn. The same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

Secretary

President

STANDARD PROVISIONS ENDORS...

D 11968

...NEWALL INSURANC...
...ENDABLE INSURANC... ...S, INC.        X        ...mer...
...SS INFORMATION                                    UNDERWRITING INFORMATION

...ve... See Pg. / 73
        11969

1 SOLID WASTE COLLECTION & DISPOSAL
2 RECEIPTS-$125,000,000 (EST.)
3 LARGEST LOSS $60,000 AUTO B.I. CLAIM

| ...30... 2330 | | | 60 | | 15% | 7307 | 12 |
|---|---|---|---|---|---|---|---|
| CO. | CONTRACT | SUB LINE | CLASS | Maj. Line | G.A. COMM. | BRK'S. COMM. | PRODUCER STATE OFF. |

Renewal of **NEW**              Producer    INS. MARKETING INTERN'L
Rowrite of                                  1938 PACIFIC AVE.
                                            LONG BEACH, CALIF. 90806        Certified Copies:
Extra Dailies:            In favor of:      WASTE MANAGEMENT, INC. SEE END # 11
                      Address:              900 JORIE BOULEVARD
                                            OAK BROOK, ILLINOIS
                      Type of Coverage:     UMBRELLA LIABILITY

☐ In the amount of:         **$5,000,000**

☒ Term: Beginning at **12:01 A.M.** on the **1ST** day of **OCTOBER** 19 **73**
         and ending at **12:01 A.M.** on the **1ST** day of **OCTOBER** 19 **76**
         Standard time at the place of location of risks insured, and in accordance with terms and
         conditions of the form(s) attached and the Standard Clauses on the reverse side of this
         page.

Forms:   At time of issuance this Policy contains a **5** page insuring Form and Endorsements.
         1 through **4** inclusive. Standard Clause **2** shall not apply.

SURPLUS LINES INFORMATION                                    CROSS REFERENCES

| Premium | Due: At Inception | 1st Anniversary | 2nd Anniversary | |
|---|---|---|---|---|
| PREMIUM | $ 47,500.00 | $ | $ | ANN'L REVIEW ☒ |
| State Tax | $ | $ | $ | ADJ. ☐ |
| Stamping Fee | $ | $ | $ | INST. ☐ |
| Service Fee | $ | ADDITIONAL | $ Premium | $ 15,833.00 |
| Policy Fee | $ | $ | $ | ENTER FIRE ☐ |
| | | State Tax | % | ENTER QUAKE ☐ |
| | | Federal Tax | % | |
| | | Stamping Fee | % | |
| TOTAL | 47,500.00 | | | $ 15,833.00 |

All other terms and conditions remain unchanged.
This endorsement...                         D 11968
        Dated at **LOS ANGELES, CALIFORNIA**
ISSUE this... day of **AUGUST** 19 **73**   rb;

...TED AT    LOS ANGELES, CALIFORNIA

OCTOBER 1    19 75    md              By
                                     DEPENDABLE INSURAN...

RECEIVED
SEP 4 1973

# UMBRELLA LIABILITY INSURANCE

**POLICY NO.** D 61968

## DECLARATIONS

**ITEM 1.**

**Named Insured:** WASTE MANAGEMENT, INC.

**Address:** (No., Street, Town, County, State)
900 JORIE BOULEVARD
OAK BROOK, ILLINOIS

**Business of Insured** WASTE COLLECTION & DISPOSAL

**ITEM 2.** Policy Period: From OCTOBER 1, 1973 to OCTOBER 1, 1976     12:01 A. M.
standard time at the address of the Named Insured as stated herein.

**ITEM 3.** Underlying Insurance

| Company | Coverage | Limits of Liability |
|---|---|---|
| FIREMANS FUND | COMPREHENSIVE GENERAL LIABILITY INCLUDING AUTOMOBILE | $500,000 CSL |
| SAME | EMPLOYERS LIABILITY | $100,000 |

See End # 6
See End # 7
See End # 1 0

**ITEM 4.** Underlying Limits     $ ~~10,000.00~~ ~~25,000.00~~ See End # 7

**ITEM 5.** Limits of Liability—Ultimate Net Loss     $ 5,000,000 each occurrence
$ 5,000,000 aggregate

**ITEM 6.** Premium     $ 47,500.00     3 YEAR

**ITEM 7.** Rate     flat

DEPENDABLE INSURANCE ASSOCIATES, INC.

By _____

D–18

# UMBRELLA LIABILITY INSURANCE

The Company agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## — INSURING AGREEMENTS —

**I. COVERAGES:** To indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss", because of:

(a) personal injuries, as hereinafter defined;

(b) property damage, as hereinafter defined;

(c) advertising liability, as hereinafter defined.

## II. DEFINITIONS:

### 1. Insured.

The unqualified word "Insured" includes the Named Insured and also includes:

(a) except with respect to liability arising out of the ownership, operation, maintenance, use, loading and unloading of automobiles, aircraft and watercraft — any director, stockholder, officer, or other employee of the Named Insured, while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the Named Insured. If the Named Insured is a partnership, any partner therein but only with respect to his liability as such;

(b) any other person or organization who is an additional Insured under any underlying policy of insurance subject to all the limitations upon coverage under such policy other than the limits of the underlying insurer's liability;

(c) with respect to any automobile owned by the Named Insured or hired for use by or on behalf of the Named Insured, or to any aircraft or watercraft hired for use by or on behalf of the Named Insured, any person while using such automobile, aircraft, or watercraft and any person or organization legally responsible for the use thereof, provided the actual use thereof is with the permission of the Named Insured. The insurance afforded by this sub-division (c), with respect to any person or organization other than the Named Insured does not apply —

  1. to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any occurrence arising out of the operation thereof;

  2. to (i) any manufacturer or aircraft engines or component parts of aircraft or aviation accessories, or (ii) any aircraft sales or service or repair organization, or (iii) any seller of aircraft supplies, accessories, equipment or component parts of aircraft or (iv) any airport or hangar operator or (v) the respective employees or agents of any of the aforementioned, with respect to any occurrence arising out of the operations of any of the aforementioned;

  3. with respect to any hired automobile, aircraft or watercraft, to the owner or lessee thereof, other than the Named Insured, or any employee of such owner or lessee.

Except with respect to sub-paragraph 2 hereof, this sub-division (c) shall not apply if it restricts the insurance granted under sub-division (b) above.

### 2. Personal Injuries.

The term "personal injuries" shall mean bodily injury, sickness or disease, mental injury, mental anguish, shock, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation, invason of right of privacy, libel, slander or defamation of character, including death at any time resulting therefrom.

### 3. Property Damage.

The term "property damage" shall mean physical injury to, or physical destruction of, tangible property, including the loss of use thereof.

### 4. Advertising Liability.

The term "advertising liability" shall mean (1) libel, slander or defamation, (2) any infringement of copyright or of title or of slogan, piracy or unfair competition or idea misappropriation under an implied contract, or (3) any invasion of right of privacy — all committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

### 5. Ultimate Net Loss.

The term "ultimate net loss" shall mean the total sum which the Insured, or any company as his insurer, or both, becomes legally obligated to pay as damages, because of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest on judgments, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Insured's or of any underlying insurer's permanent employees.

The Company shall not be liable for any expenses as aforesaid when payment of such expenses is included in other valid and collectible insurance.

### 6. Automobile.

The term "automobile" shall mean a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"Mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

## 7. Aircraft.

The term "aircraft" shall mean heavier than air or lighter than air aircraft designed to transport persons or property.

## 8. Completed Operations Hazard.

The term "completed operations" hazard includes personal injury and property damage arising out of the operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured:
"Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(3) when the portion of the work of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include personal injury or property damage arising out of:

(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations".

## 9. Products Hazard.

The term "products hazard" includes personal injury and property damage arising out of the Named Insured's pro-

ducts or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

## 10. Occurence.

The term "occurrence" shall mean (a) an accident, or (b) an event, or continuous or repeated exposure to conditions, which results during the policy period, in personal injury, property damage, or advertising liability (either alone or in combination) neither expected nor intended from the standpoint of the Insured. With respect to Coverages I (a) and I (b), except with respect to the Products-Completed Operations Hazards, all personal injury and property damage (either alone or in combination) arising out of one event or continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed to be one occurrence. With respect to Coverages I (a) and I (b), all personal injury and property damage (either alone or in combination) arising out of the Products-Completed Operations Hazards shall be deemed to be one occurrence if arising out of one lot of goods or products prepared or acquired by the Named Insured or others trading under his name. With respect to Coverage I (c), all personal injury and property damage (either alone or in combination) involving the same injurious material or act, regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants, shall be deemed to arise out of one occurrence.

**III. POLICY PERIOD: — TERRITORY:** This policy applies only to occurrences, as herein defined, which happen during the policy period; provided, however, if any occurrence happens during the policy period of this policy which results in personal injury, property damage or advertising liability of the type which would be insured under the provisions of this policy and if personal injury, property damage or advertising liability resulting from that same occurrence has also happened during the policy period of any similar policy of insurance issued by the Company to any Named Insured hereunder prior to the policy period of this policy, that policy issued by the Company which is in force at the time the first claim is made against the Insured which could result in ultimate net loss payable thereunder shall constitute the only policy of the Company which shall apply to such occurrence and to all personal injury, property damage and advertising liability (either alone or in combination) at any time resulting from such occurrence, regardless of the number of similar policies of insurance issued by the Company which could otherwise apply in the absence of this agreement.

## — EXCLUSIONS —

This policy does not apply, except insofar as coverage is available to the Insured under the underlying policies of insurance set forth in the Declarations:

(a) with respect to advertising liability, to claims made against the Insured:

(i) for failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of implied contract;

(ii) for infringement of registered trade-mark, service mark or trade-name by use thereof as the registered trade-mark, service mark or trade-name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) for incorrect description of any article or commodity;

(iv) for mistake in advertised price;

(b) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment, compensation or disability benefits law, or under any similar law, provided, however that this exclusion does not apply to liability of others assumed by the Named Insured under any contract or agreement;

(c) to claims made against the Insured:

(i) for damage to the Named Insured's products arising out of such products or any part of such products;

(ii) for property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(iii) for damages for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn

from the market or from use because of any known or suspected defect or deficiency therein;

(iv) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the Insured for personal injuries or property damage (other than property damage to a product of the Insured) resulting from improper or inadequate performance, design or specification;

(d) to any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

(e) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft or watercraft owned by any Insured or leased by any Insured for a period of more than thirty consecutive days; provided however, this

exclusion shall not apply to liability of the Named Insured for any other non-owned aircraft or watercraft;

(f) to any liability of the Insured due to war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(g) to injury to or destruction of property owned by any Named Insured;

(h) to liability of any Insured hereunder for assault and battery committed by or at the direction of such Insured except liability for personal injury or death resulting from any act alleged to be assault and battery committed for the purpose of preventing personal injury or property damage.

## — CONDITIONS —

1. **Premium.** The premium for this policy shall be as stated in the Declarations Page.

2. **Additions.** In the event of additional insureds or additional coverages being added to the coverage under the Underlying Insurances while this policy is in force prompt notice shall be given to the Company and the Company shall be entitled to charge appropriate additional premiums thereon.

3. **Inspection and Audit.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.
The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

4. **Special Conditions Applicable to Occupational Disease.** As regards personal injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured, this policy is subject to the same warranties, terms or conditions (except as regards the premium, the amount and limits of liability, any condition respecting "other insurance" and the renewal agreement, if any) as are contained in or as may be added to the policies of Underlying Insurances set forth in the Declarations prior to the happening of an occurrence for which claim is made hereunder.

5. **Limits of Liability.** The Company shall only be liable for ultimate net loss in excess of either:

(a) except as provided in sub-paragraph (b) hereof, the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the Declarations; or

(b) as respects each occurrence not covered by such underlying insurance, or where each occurrence is covered by such underlying insurance but in recoverable amounts less than the Underlying Limits set forth in Item 4 of the Declarations, the amount of ultimate net loss set forth in the Declarations as "Underlying Limits",

but in no event shall the Company be liable for an amount in excess of the applicable limit of liability set forth in Item 5 of the Declarations.

The limit of liability stated in Item 5 of the Declarations as applicable to "each occurrence" is the total limit of the Company's liability under this policy for ultimate net loss as a result of any one occurrence.

Subject to the limit of liability set forth in Item 5 of the Declarations with respect to "each occurrence", the limit of liability so set forth as "aggregate" shall be the total limit of the Company's liability under this policy for ultimate net loss:

(1) because of all personal injury and property damage during each consecutive twelve months of the policy period, arising out of the Products-Completed Operations Hazards, and

(2) because of all personal injury during each consecutive twelve months of the policy period sustained from Occupational Disease by any employee of the Insured.

In the event of reduction or exhaustion of the aggregate limits of liability under the policies of underlying insurance by reason of losses paid thereunder, this policy shall:

(i) in the event of reduction, pay the excess of the reduced underlying insurance, and

(ii) in the event of exhaustion, continue in force as underlying insurance,

but nothing in this paragraph shall operate to increase the limits of the Company's liability.

6. **Severability of Interests.** The term "the Insured" is used severally and not collectively, but the inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability. If more than one Insured is named in Item 1 of the Declarations, it is agreed that the limits of the Company's liability shall not apply separately to each such Insured.

7. **Notice of Occurrence.** When an occurrence takes place which, in the opinion of the Insured, involves or may involve liability on the part of the Company, prompt written notice shall be given by or on behalf of the Insured to the Company or to a Dependable Insurance Associates, Inc. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence. Failure to so notify the Company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

8. **Assistance and Cooperation of the Insured.** Except when the aggregate limits of liability under the policies of underlying insurance set forth in Item 3 of the Declarations have been exhausted, the Company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the Insured but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding re-

ative to an occurrence where, in the judgment of the Company, the claim or suit involves or appears reasonably likely to result in liability for indemnity by the Company under this policy, in which event the Insured, any underlying insurers involved, and the Company, shall cooperate in all things in the defense of such claim or suit.

With respect to any claim made, suit brought or proceeding instituted against the Insured to which the policies of underlying insurance set forth in Item 3 of the Declarations will not apply because of the exhaustion of the aggregate limits of liability thereunder, if such claim, suit or proceeding is one which could result in liability of the Company to indemnify the Insured hereunder for damages, the Company shall assume complete control of the investigation, negotiations, settlement and defense of any such claim, suit or proceeding against the Insured. The Insured shall cooperate with the Company and, upon the Company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence.

**Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

**Appeals.** In the event the Insured or the Insured's underlying insurer(s) elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its own cost and expense, and shall be liable for the taxable costs, disbursements and interest on judgments incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the limit of its liability stated in this policy and, in addition, the cost and expense of such appeal.

**Loss Payable.** Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Insured shall have paid an amount of ultimate net loss in excess of the amount borne by the Insured or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty days after they are respectively claimed and proven in conformity with this policy.

**Other Insurance.** If any other valid and collectible insurance exists protecting the Insured against ultimate net loss covered by this policy (other than the policies of underlying insurance specified in Item 3 of the Declarations and other than any policy with respect to which this policy is specified therein as underlying insurance), this policy shall be null and void with respect to such loss whether the Insured is specifically named in such other policy of insurance or not; provided, however, if the amounts recoverable by the Insured under such other insurance are not sufficient to completely protect the Insured against such loss, this policy shall apply but only as excess insurance

over such other valid and collectible insurance, in an amount not to exceed the limit of the Company's liability stated in this policy, and not as contributing insurance.

13. **Subrogation.** Inasmuch as this policy is excess coverage, the Insured's right of recovery against any person, firm or corporation cannot be exclusively subrogated to the Company; therefore, in case of any payment hereunder, the Company will act in concert with all other interests, including the Insured, concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests, including the Insured, that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests, including the Insured, of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests, including the Insured, concerned, in the ratio of their respective recoveries as finally settled.

14. **Changes.** Notice or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy.

15. **Assignment.** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon.

16. **Cancellation.** This policy may be cancelled at any time by the Insured first named in Item 1 of the Declarations by mailing to the Company or to Dependable Insurance Associates, Inc., written notice stating when thereafter such cancellation shall become effective. This policy may be cancelled by the Company or by Dependable Insurance Associates, Inc., on behalf of the Company, by mailing to the Insured first named in Item 1 of the Declarations, at the address shown in the Declarations, written notice stating when, either not less than 30 days thereafter or the maximum cancellation notice period stated in the policies of underlying insurance set forth in the Declarations, whichever is lesser, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour stated in such notice shall become the end of the policy period. Delivery of such written notice either by such Insured or the Company, or by Dependable Insurance Associates, Inc., on behalf of the Company, shall be equivalent to mailing. If such Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is affected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

17. **Maintenance of Underlying Insurance.** The policy or policies set forth in the Declarations as Underlying Insurance shall be maintained in full effect during the period this policy remains in force except for any reduction of the aggregate limits contained therein solely by payment of claims for occurrences which take place during this policy period. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been if the Insured had complied with this condition.

WITNESS WHEREOF, the Company has caused this policy to be countersigned on the Declarations page by Dependable Insurance Associates, Inc.

REINSURANCE CEDED TO AND ASSUMED BY

**BURT AND SCHELD, INC.**

## SERVICE FIRE INSURANCE COMPANY OF NEW YORK

THRU

**BURT AND SCHELD, INC - FACULTATIVE MANAGERS**
146 SOUTH ATLANTIC AVENUE, ORMOND BEACH, FLORIDA 32074

No. 1531

Mr. Fred B. Nelson
Dependable Insurance Associates, Inc.
3435 Wilshire Boulevard, Suite 2220
Los Angeles, California  90010

ACCOUNTING CODE

_____C5 125_____

CEDING COMMISSION __27½__ %

1. SERVICE FIRE INSURANCE COMPANY OF NEW YORK (herein called the Reinsurer) does hereby Reinsur

The Stonewall Insurance Company _____ Birmingham, Ala.

CEDING COMPANY

(herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the pre mium and subject to the terms, conditions and amount of liability set forth herein, as follows:

2. Name And Address Of Insured: __Waste Management, Inc._____ Oak Brook, Ill.

3. Policy No.: __D 11968__ Effective From: __October 1, 1973__ To: __October 1, 1976__
(12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

4. Reinsurance Period: Effective From: __October 1, 1973__ To: __October 1, 1976__
(12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

5. DETAILS OF REINSURANCE AFFORDED:

| SECTION I TYPE OF INSURANCE | SECTION II POLICY LIMITS AND APPLICATION | SECTION III COMPANY RETENTION | SECTION IV REINSURANCE ACCEPTED | SECTION V BASIS OF ACCEPTANCE |
|---|---|---|---|---|
| Excess Umbrella Liability | $5,000,000 combined single limit each occurrence/ annual aggregate excess primary insurance | $500,000 part of Section II Policy limits | $500,000 part of 5,000,000 combined single limit each occurrence/ annual aggregate excess primary insurance | Quota Share |

6. Reinsurance Premium Computation

| PREMIUM BASIS | | ESTIMATED EXPOSURE | RATE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| Flat | | | | |

Deposit Premium $ __4,750.00__ Minimum Premium $ __4,750.00__

PREMIUM IF PAID IN INSTALLMENTS

| EFFECTIVE DATE | 1ST ANNIVERSARY | 2ND ANNIVERSARY | TOTAL PREMIUM | |
|---|---|---|---|---|
| | | | | |

7. Audit Period: __None__

BURT AND SCHELD, INC.

**SEE BACK OF CERTIFICATE FOR ADDITIONAL TERMS AND CONDITIONS.**

AUTHORIZED SIGNATURE

The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section III of 5 above, and the liability of the Reinsurer specified in Section IV of 5 above shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of the Reinsurer or Burt and Scheld, Inc. at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

Prompt notice shall be given to the Reinsurer, thru Burt and Scheld, Inc., by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

). All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

i. Payment of its proportion of loss and expense paid by the Company will be made by Burt and Scheld, Inc., for the Reinsurer, to the Company promptly following receipt of proof of loss.

2. The Reinsurer will be paid or credited by the Company with its proportion of salvages, i. e., reimbursement obtained or recovery made by the Company, less the actual cost, excluding Company salaries and office expenses, of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

3. The Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

i. In the event of insolvency of the Company, the terms of this Certificate are amended to conform to the statute of any state of the United States having jurisdiction to the extent that such reinsurance as is afforded hereunder may be credited to the Company as admitted asset or deduction from liability, it being understood that, subject to such amendment, the Reinsurer may avail itself of any other provision of any such statute applicable.

i. Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N. Y., unless some other location is mutually agreed upon by the two parties in interest.

i. Cancellation of the Ceding Company's policy shall constitute automatic cancellation of this Certificate and the Reinsurance provided by same. Cancellation may also be accomplished on a pro-rata basis by either the Ceding Company or its Representative, or Burt and Scheld, Inc., mailing or delivering to the other written notice stating when such cancellation shall be effective, except that when cancellation is instituted by Burt and Scheld, Inc., the effective date shall not be prior to ~~thirty (30)~~ forty (40) JMc days from the date of the notice.

. The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

i witness whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

## NOTICE

REMIUMS, COPIES OF POLICIES & ENDORSEMENTS, NOTICES & PROOFS OF LOSS, SALVAGES & RE-OVERIES, NOTICES OF CANCELLATION AND ALL COMMUNICATIONS OF ANY KIND IN CONNEC-ION WITH THIS CERTIFICATE SHALL BE TRANSMITTED TO THE REINSURER THRU

**BURT AND SCHELD, INC.**

**146 SOUTH ATLANTIC AVENUE**

**ORMOND BEACH, FLORIDA 32074**

## REINSURANCE ENDORSEMENT

REINSURANCE CEDED TO AND ASSUMED BY

# NORTH AMERICAN COMPANY

FOR PROPERTY AND CASUALTY INSURANCE

THRU

**BURT AND SCHELD, INC. - FACULTATIVE MANAGERS**
140 SOUTH ATLANTIC AVENUE, ORMOND BEACH, FLORIDA 32074

Mr. Fred Anderson
Dependable Insurance Associates, Inc.
3435 Wilshire Boulevard, Suite 2220
Los Angeles, California  90010

**CEDING COMPANY:** Stonewall Insurance Company

**CEDING COMPANY'S POLICY NO.** D 11968

**NAME OF INSURED:** Waste Management, Inc.

**EFFECTIVE DATE OF ENDORSEMENT:** October 1, 1975

**REINSURANCE CERTIFICATE NO.** 1531 **IS HEREBY AMENDED AS FOLLOWS:**

Additional Premium: $890.63

It is hereby agreed that Item 5 "Details of Reinsurance Afforded" is
amended to read as follows for the term October 1, 1975 to October 1, 1976:

Section IV:  $500,000 part of 4,000,000 excess
1,000,000 combined single limit excess
underlying insurance



**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**ATTACHED TO AND FORMING A PART OF REINSURANCE CERTIFICATE NO.** 1531

**ENDORSEMENT NO.** 1 **DATE PREPARED** October 30, 1975 /sb

BURT AND SCHELD, INC.

AUTHORIZED SIGNATURE

11968

S



## REINSURANCE ENDORSEMENT

### REINSURANCE CEDED TO AND ASSUMED BY

## SERVICE FIRE INSURANCE COMPANY OF NEW YORK

#### THRU

### BURT AND SCHELD, INC. - FACULTATIVE MANAGERS

146 SOUTH ATLANTIC AVENUE, ORMOND BEACH, FLORIDA 32074

RECEIVED

JUN 7 1974

Mr. Fred B. Nelson
Dependable Insurance Associates, Inc.
3435 Wilshire Boulevard, Suite 2220
Los Angeles, California  90010

**CEDING COMPANY:** The Stonewall Insurance Company

**CEDING COMPANY'S POLICY NO.** D 11968

**NAME OF INSURED:** Waste Management, Inc.

---

EFFECTIVE APRIL 1, 1974

SERVICE FIRE INSURANCE COMPANY OF NEW YORK HAS CHANGED ITS NAME TO

NORTH AMERICAN COMPANY

FOR

PROPERTY AND CASUALTY INSURANCE

THE REINSURANCE CERTIFICATE TO WHICH THIS ENDORSEMENT ATTACHES

IS HEREBY AMENDED ACCORDINGLY

TO CONFORM

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**          5/31/74

---

**ATTACHED TO AND FORMING A PART OF REINSURANCE CERTIFICATE NO.** 1531

BURT AND SCHELD, INC.

*James F. McNamara*

AUTHORIZED SIGNATURE

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Stonewall Insurance Company

### DEFENDANTS

XL Reinsurance America, Inc.

**(b)** County of Residence of First Listed Plaintiff  Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  728-0050
Kevin J. O'Connor & Michael S.Batson
Hermes, Netburn, O'Connor&Spearing, PC
111 Devonshire St., Boston, MA 02109

Attorneys (If Known)

05-11798 NG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❑ 1  U.S. Government Plaintiff
- ❑ 3  Federal Question (U.S. Government Not a Party)
- ❑ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | | | ❑ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ❑ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ❑ 2  Removed from State Court
- ❑ 3  Remanded from Appellate Court
- ❑ 4  Reinstated or Reopened
- ❑ 5  Transferred from another district (specify)
- ❑ 6  Multidistrict Litigation
- ❑ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sec. 1332(a)

Brief description of cause: The Plaintiff seeks to recover paid losses under applicable reinsurance contracts.

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $2,130,377.37

CHECK YES only if demanded in complaint:
JURY DEMAND: ❑ Yes  ❑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  8/31/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **Title of case (name of first party on each side only)** Stonewall Insurance COmpany v. XL Reinsurance America,Inc.

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).**

   [ ] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.   150, 152, 153.

   05 - 11798 NG

3. **Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

   _____

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**
   YES [ ]   NO [X]

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)**
   YES [ ]   NO [X]

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**
   YES [ ]   NO [ ]

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**
   YES [ ]   NO [X]

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**
   YES [X]   NO [ ]

   A.  **If yes, in which division do all of the non-governmental parties reside?**
       Eastern Division [X]   Central Division [ ]   Western Division [ ]

   B.  **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**
       Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
**ATTORNEY'S NAME** Kevin J. O'Connor, Esq.
**ADDRESS** Hermes, Netburn, O'Connor & Spearing, P.C.
**TELEPHONE NO.** 111 Devonshire St., Boston, MA  02109   (617) 728-0050

(CategoryForm.wpd - 5/2/05)